IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, <u>ex rel.</u> RORY MAXWELL, JOHN BUSH, AND SUPREME FOODSERVICE GmbH,<br><br>     Plaintiffs,<br><br>v.<br><br>ANHAM USA, INC., <u>ET AL.</u>,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:14-cv-156 |

<u>**MEMORANDUM OPINION**</u>

THIS MATTER comes before the Court on Relators' Motion for an Award of Attorneys' Fees and Costs and Defendants' Motion for Leave to File Sur-Reply.

Relators filed this matter in 2014, alleging that Defendants violated the False Claims Act, 31 U.S.C. § 3729, *et seq.*, by fraudulently inducing certain government agencies to award two contracts to provide food, water, and transportation services. On January 9, 2017, the Government declined to intervene in the case. The Court entered a scheduling order on August 22, 2017, setting the close of discovery for January 12, 2018.

On October 11, 2017, some ten months after it declined intervention, the Government moved to stay this case for 90 days, arguing that continued discovery could harm a related criminal

investigation. In support of its motion, the Government argued that the factual allegations in this civil action were "central" to the matters under criminal investigation, but also made clear that "[the] criminal investigation was not triggered by the civil litigation." The Government's motion to stay was granted on October 24, 2017. The Government subsequently moved, and the Court granted, five additional requests to extend the stay, each time for an additional 90 days. On February 14, 2019, the Government requested that the stay be extended more permanently, until "90 days after the close of evidence in the criminal matter."

After the first 90-day stay was entered on October 24, 2017, Relators continued to work on the case and billed a significant number of hours. Eventually, on December 2, 2019, the parties "globally" settled the civil and criminal matters for a total of $45 million. The parties agree that $27 million of that global settlement was attributed to the civil claims against Defendants and that the Relators were awarded a 27.5% share of that amount. Pursuant to 31 U.S.C. § 3730(d), Relators now move for an award of $5,702,779.99 in attorneys' fees and $117,192.45 in costs. Relators also request leave to file a "fees on fees" petition for fees incurred in connection with preparing and filing this motion, and Defendants have moved to request leave to file a sur-reply.

Relators' supporting evidence and declarations summarize roughly seven years of legal work. Relators have further organized

2

the fees incurred on this matter into five phases: 1) the Relator Investigation Phase; 2) the Government Investigation Phase; 3) the Litigation Phase; 4) the Permanent Stay period; and 5) the Settlement Negotiation phase.

Defendants do not challenge Relators' entitlement to a fee award, but they do object to the amount requested. Defendants specifically argue that Relators should not be permitted to recover any fees incurred on "pre-complaint due diligence," fees incurred on their "unsuccessful efforts to convince the government to intervene," fees relating to any work performed during the period that this case was stayed (beginning October 24, 2017), and any fees connected to their work supporting the Government's related criminal investigation. In addition to those categorical exclusions, Defendants also argue that the proposed award should be reduced by certain percentages to account for insufficiently descriptive billing, block-billed time entries, duplicative work, overstaffing, and Relators' application of their attorneys' 2020 rates to calculate the proposed fee award. Lastly, Defendants argue that the Court should reduce the award to account for Relators' relative lack of success when compared to their original allegations in the case.

When presented with a motion for an award of attorneys' fees, the Court's first task is to determine the "lodestar" fee. See Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). This

amount represents the number of reasonable hours expended on the matter times a reasonable rate. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553-54 (2010). The Court's calculation of the award is further guided by consideration of twelve factors. Grissom, 549 F.3d at 320-21 (citing Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978), cert. denied, 439 U.S. 934 (1978)). The twelve factors, otherwise known as the Barber factors, are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Barber, 577 F.2d at 226 n.28; see also Hensley v. Eckerhart, 461 U.S. 424, 434 n. 9 (1983) (approving of these twelve factors as named in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)). The Court must also subtract fees for hours spent on unsuccessful claims and award "some percentage of the remaining

4

amount, depending on the degree of success enjoyed by the plaintiff." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013).

Courts do not need to mechanically list or comment on each factor, only those that it finds are applicable. Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.), 86 F.3d 364, 376 (4th Cir. 1996). However, district courts must also "set forth clear[] findings of fact for fee awards so that [the Fourth Circuit] ha[s] an adequate basis to review for abuse of discretion." Berry v. Schulman, 807 F.3d 600, 617 (4th Cir. 2015).

A party seeking a fee award "bears the burden of establishing the reasonableness of the hourly rates requested." Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987). The Court's determination of whether a party's requested rates are reasonable must be guided by a comparison to the prevailing market rates in "the community in which the court where the action is prosecuted sits." Rum Creek Coal Sales v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994). The fee applicants must establish that the proposed rates are reasonable by producing "'satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'" Robinson v. Equifax Info. Servs. LLC, 560 F.3d 235, 244 (4th Cir. 2009) (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)).

When determining whether a proposed rate is reasonable, courts in the Alexandria division routinely consult the range of

rates approved of in Vienna Metro LLC v. Pulte Home Corp., 1:10-cv-00502, 2011 U.S. Dist. LEXIS 158648, at *18 (E.D. Va. Aug. 24, 2011). Specifically, the Vienna Metro court determined that the following range of rates was reasonable for litigation in this division:

| Range of Hourly Rates in Northern Virginia | | | | | |
|---|---|---|---|---|---|
| Years of Experience | 1-3 | 4-7 | 8-10 | 11-19 | 20+ |
| Hourly Rate | $250-435 | $350-600 | $465-640 | $520-770 | $505-820 |

Id.; see also Entegee, Inc. v. Metters Indus., 17-cv-499, 2018 U.S. Dist. LEXIS 121222, at *6 (E.D. Va. July 19, 2018) (collecting cases approving of rates within the Vienna Metro range).

In this case, Relators lead counsel was Robert Begleiter of Constantine Cannon LLP, but the total requested award includes fees and costs incurred by fifteen lawyers, four litigation support members, and four paralegals. Aside from lead counsel Begleiter (20+ years of experience at $875/hour), Relators counsel also included Partners Gary Malone (20+ years of experience at $995/hour), Taline Shakian (16 years of experience at $760/hour), and Samuel Butt (15 years of experience at $450/hour). Fees were also incurred by associates Kristen Broz (9 years of experience at $445/hour), Hamsa Mahendranathan (8 years of experience at $540/hour), Max Voldman (6 years of experience at $475/hour), James Kovacs (7 years of experience at $440/hour), Matthew Vaccaro (7

years of experience at $335/hour), Margaux Poueymirou (5 years of experience at $405/hour), and Grant Petrosyan (6 years of experience at $360/hour). The proposed award also includes fees incurred by certain "review attorneys," including Nicolas Puygrenier (15 years' experience), LaineAlee O'Mara (20+ years' experience), Shari Newman (14 years' experience), and Robert Fernez (8 years' experience) all of whom billed at a $290/hour rate. Relators also employed other litigation support staff on the matter, including Tuan Nguyen-Huynh ($450/hour), Tomas Ernshtayn ($300/hour), Eric Dong ($285/hour), and Jenna Bradford ($175/hour). Finally, the proposed award includes time incurred by paralegals Kevin Morrison ($325/hour), Catie Boardman ($305/hour), Nancy Li ($295/hour), and Yoo-Nah Park ($250/hour).

Defendants do not argue that the proposed rates for any of Relators' counsel or support staff are unreasonable, and the Court agrees that the proposed rates are appropriate. Although the rates of lead counsel Begleiter and Partner Gary Malone are slightly above the high-end of the Vienna Metro matrix, the Court finds that their rates are reasonable given their expertise and the complexities of this case. The rates of the remaining attorneys and support staff are within the Vienna Metro range and are reasonable for litigating a case of this magnitude and complexity in this division.

A court's calculation of the lodestar fee and its analysis of the Barber factors necessarily includes some degree of overlap. See McAfee, 738 F.3d 81, 89 ("We have indeed recognized that, consistent with the district court's analysis, 'to the extent that any of the [Barber] factors has already been incorporated into the lodestar analysis, we do not consider those factors a second time.'")(quoting E. Associated Coal Corp. v. Dir., OWCP, 724 F.3d 561, 570 (4th Cir. 2013)). In this case, the Court finds that its analysis of Relators' requested rate subsumes four of the Barber factors: the skill required to properly perform the legal services rendered (factor three); the customary fee for like work (factor five); the experience, reputation and ability of the attorney (factor nine); and attorneys' fees awards in similar cases (factor twelve). See Entegee, Inc. v. Metters Indus., No. 17-cv-499, 2018 U.S. Dist. LEXIS 121222, at *6-7 (E.D. Va. July 19, 2018) (considering factors three, five, nine, and twelve in determining the proper rate).

Having determined that the proposed rates are reasonable, the Court will address Defendants' arguments that Relators cannot recover any fees incurred in connection with pre-complaint investigative work, Relators' unsuccessful efforts to convince the Government to intervene in the case, all work performed while the case was stayed, and work performed supporting the Government's criminal case.

Defendants first argument that Relators' counsel should not recover fees incurred on performing pre-complaint due diligence and other investigative work has no merit. Defendants admit that while some recovery for time spent prior to filing the complaint is appropriate, they argue that because Relators' counsel has significant experience with the False Claims Act it was "unreasonable" to spend nearly $66,055.04 in fees on work performed prior to filing the complaint. Relators respond that Defendants have cited to no authority supporting the proposition that pre-complaint work is not recoverable.

The Court is unpersuaded by Defendants' contention that pre-complaint work is not recoverable or that the amount billed is unreasonable. Any case, particularly one brought under the False Claims Act, necessarily involves some amount of pre-complaint investigative work, research, and due diligence before filing. Given the facts and legal issues involved in this case, the Court finds that the roughly $66,000 in fees incurred during this phase was very reasonable.[1]

Defendants next argue that Relators should not be compensated for work performed on their unsuccessful efforts to convince the

---

[1] Defendants additionally argue that because the billing descriptions in the pre-complaint phase do not adequately describe the tasks performed, i.e., that they are "vague" or relate to analyzing "unspecified" documents or witnesses, fees incurred for this phase should not be recovered. Because Defendants separately argue that Relators entire award should be reduced by 50 percent to account for "vague" and "unspecified" billing descriptions of the work performed, this argument is addressed separately.

Government to intervene. Defendants contend that the Court should not award Relators for "lobbying" efforts and that the Court must exclude expenses relating to "false steps or avenues" that were unsuccessfully explored, even if the litigation leads to some form of recovery. Defendants propose that the $889,199.91 in fees billed during the "government investigation" period (Phase II) be excluded entirely.

Relators' counsel responds that, during the government investigation phase, they worked on many routine tasks necessary to litigating the case, including preparing for meetings with the Government, conducting "targeted document review," providing the Department of Justice with legal analysis of issues, and answering the Government's questions. Relators also note that the Government is the "injured party" in cases brought under the False Claims Act and that "work conducted by Relators to educate the Government and cooperate" during this phase is integral.

The Court finds that Relators are not entitled to recover fees generated during the "government investigation" phase of this case. To begin, there is substantial overlap between Relators' justification for the work that was performed during the pre-complaint phase and that which was performed during the government investigation phase, the only difference being that the complaint had been filed and the Government began its own investigation. While the Court agrees with Relators that the Government is the

injured party in a False Claims Act case and that they are entitled
to perform some pre-complaint due diligence, it disagrees that the
Relators' efforts to convince the Government to intervene was
"integral" to the case. Once the case was filed, the Government's
obligation to investigate the allegations was mandated by 31 U.S.C.
§ 3730(b), and although Relators legal analysis may have been
beneficial to the Government, it was hardly "integral," much less
necessary.[2] It was not reasonable to expend nearly 1,419.85
billable hours for efforts that were unsuccessful, and as a result,
could not have been necessary to the resolution of the case.
Hensley, 461 U.S. at 434 (fee recovery should not include
"otherwise unnecessary" tasks). For these reasons, Relators
proposed award should be reduced by $889,199.91.

Defendants next argue that it was "completely unreasonable"
for Relators to demand payment for 8,217.3 hours of work performed
while the case was stayed. Relators respond that the stays were
temporary and that they had no knowledge of whether the Government
would seek an extension until the eve of each stay's expiration.
As a result, Relators argue that they had to continue to work on
the case and their discovery obligations as if the Court would not

---

[2] The Court recognizes that Relators were obligated to serve a copy of the
complaint and provide a "written disclosure of all material evidence and
information" to the Government when the case was filed. 31 U.S.C. § 3730(b)(2).
However, the Court finds that counsels' preparation for these tasks occurred
prior to filing the complaint and the "government investigation" phase of this
case.

grant any further extensions to the stay. Defendants respond that Relators' bills reflect that they were in regular contact with the Government and that they could have simply asked whether the Government intended to seek an extension, and in any event, that the bills reflect continued work on the matter immediately after the Court granting each temporary stay. Defendants propose reducing the proposed award by cutting all fees incurred during the stay period, or $2,842,363.18.

Relators are correct that discovery deadlines were approaching when this case was first stayed on October 24, 2017, and Robert Begleiter's reply declaration states clearly that he "repeatedly asked the lead attorney on the investigation from the Department of Justice . . . whether the Government intended to seek a further extension of the stay," but received no response until days before the expiration of each deadline. Defendants' argument contends that any work performed during the stay period was *per se* unreasonable, but they do not identify any controlling authority for that proposition or any specific tasks that Relators should not have performed during the stay. While the Court's stay undoubtedly relieved some of the pressures associated with upcoming deadlines, it did not order Relators to stop work on the case altogether. Despite the stay, the record reflects that the parties did engage in some discovery related negotiations during this time, and after the more permanent stay was entered on

12

February 15, 2019, the parties began settlement negotiations on the global settlement. The Court simply cannot agree with the argument that Relators should have stopped work entirely, and because Defendants have not identified any work that was unreasonable to perform during this stay, the Court finds that Relators were entitled to continue to work on the case.

The Court is less convinced by Relators' insistence that they may recover fees incurred "in support" of the related criminal case. Defendants argue that Relators should not be entitled to recovery for work on a "criminal" case by the plain terms of the False Claims Act, which permits recovery of fees under the section heading "*Civil* Actions for False Claims." 28 U.S.C. § 3730 (emphasis added). Defendants also argue that the criminal case was only marginally related to this matter, noting that the Government's memorandum in support of its motion to stay stated directly that "[the] criminal investigation was not triggered by the civil litigation." Defendants also argue that because Relators' proposed award does not clearly indicate how many hours, overall, were spent supporting the criminal case, the Court should reduce the overall award by 50%.

Relators respond by relying on Miller v. Holzmann, 575 F. Supp. 2d 2 (D.D.C. 2008) for the proposition that they may recover fees incurred in conjunction with a criminal prosecution in a False Claims Act case. Significantly, the Government in Holzmann

intervened in the civil case but delayed its prosecution efforts
to pursue criminal antitrust charges against the same defendants
in a separate criminal case. Id. at 22. The Court in Holzmann
specifically found that the information Relators provided to the
Government "materially aided its investigation, and the
[Government] later relied on that investigation's fruits in
prosecuting the [civil] case." Id. at 23. To be sure, the criminal
prosecution in Holzmann went so far as to estop the civil
defendants from contesting liability on certain contracts which
formed the basis of the civil case. Id. at 23 n.34. As a result,
the court in Holzmann awarded Relators' fees in connection with
work assisting the Government with its criminal case of the same
defendants. But here, unlike in Holzmann, the Government did not
intervene, and in fact, acknowledged some distance between its
criminal investigation and this case by noting that this case "was
not triggered by the civil litigation." The Court finds that there
is far less overlap between the civil and criminal cases at issue
here than in Holzmann. There is also no evidence that any of the
work Relators did in support of the Government's criminal
investigation "materially aided" the Government, much less that
any of Relators' support in the criminal matter estopped Defendants
from contesting liability in this case.

The Court agrees with Defendants that Relators are not
entitled to recover for work performed supporting the criminal

investigation, but it does not agree that a 50% reduction to the total award is appropriate. Tex. State Teacher's Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989) ("district courts should exercise their equitable discretion . . . to arrive at a reasonable fee award"). Instead, the Court finds that a 20% reduction applied to the fees incurred during the "stay period" ($2,842,363.18) is appropriate. The Court does not agree that Relators worked "equally" on the civil and criminal matters such that a 50% reduction to the entire award would be appropriate. Based on the Court's review of evidence submitted in support of this motion, Relators' were incurring fees supporting the criminal case during the stay, but they were also performing several tasks in support of this case. Applying this reduction, the Court will reduce the overall fee award by $568,472.64.

Defendants next argue that the remaining hours should be "substantially reduced" because they are not supported by "sufficient time entries." Defendants argue that thousands of hours are vague and unsupported; that counsels' block time-entries do not provide enough information to determine whether they are reasonable; that the time entries are inflated by duplicative work and overstaffing; that the fees should not be based on each lawyer and staff members' 2020 rates; and that Relators should not recover any "fees on fees."

In support of their argument that thousands of hours are vague and unsupported, Defendants include a "sampling" of entries as Exhibit H to their opposition. Relators respond that the bulk of the entries Defendants identify as insufficiently detailed relate to document review by junior attorneys, and that in any event, Defendants' proposed award includes a 15% discount to some of the billing attorneys. The Court agrees with Relators that many of the entries identified by Defendants relate to routine discovery tasks by junior attorneys and other support staff. Although many of the task descriptions identified by Defendants are brief, the Court does not agree that a longer or more detailed description of "document review" would aid its analysis or understanding of the work being performed. On the contrary, the Court finds that, given the nature of tasks being performed, the entries identified by Defendants are sufficiently detailed to permit a reasonableness analysis.

Defendants next argue that Relators' proposed award should be reduced by 20% to account for their refusal to break down the specific amount of time spent on each task, otherwise known as "block billing," identifying another sampling of these entries in Exhibit I. Relators respond that there is no *per se* rule that fees designated by "block" style task descriptions must be reduced. While it may be appropriate to reduce a fee award in a case where the Court does not have sufficient context of the entry to permit

a reasonableness analysis of each task, the Court finds that the entries identified by Defendants are sufficiently detailed to permit a reasonableness review and that no reduction is necessary.

Defendants also complain that Relators' fees are inflated by duplicative work and overstaffing. Defendants identify several entries in their Exhibits J, K, and L which, they contend, reflect tasks performed by more senior attorneys or partners that either should have been performed by more junior attorneys or were outright duplicative. As Relators note, however, they have already cut all fees of any timekeeper who billed less than 20 hours on the matter and reduced the fees of Mr. Begleiter, Mr. Malone, and Ms. Shakian by 15%. The Court finds no basis to reduce the entries Defendants complain of, and that Relators' self-imposed discounts to the proposed award adequately compensate for any duplicative work or overstaffing.

Defendants next argue that the Court should apply a 20% reduction to the proposed award because it contains fees based on only the 2020 rates of Relators' attorneys and support staff, despite Relators' bills reflecting over seven years of legal work on the matter. Relators respond that applying their 2020 rates is warranted because it "compensates for the delay in payment" from the date when the fee was generated.

The Court finds that Relators are not entitled to an award based exclusively on their 2020 rates and that awarding the

17

proposed amount would result in a windfall. Although Defendants propose reducing the overall award by a seemingly arbitrary amount, 20%, the Court finds that a 5% reduction more appropriately accounts for Relators' inflated fees yet permits recovery of experience-based rate increases. See Vienna Metro, 2011 U.S. Dist. LEXIS 158648 at *18 (table of approved rates increasing by years of experience). Accordingly, the Court will reduce the proposed award by an additional $285,139.

Defendants next argue that the proposed award should be reduced for lack of success relative to the amount in controversy. Defendants argue that Relators alleged Defendants participated in an "$8 billion scheme" and that the $27 million recovery represents only .3% of that amount. Relators respond that despite the allegations in the complaint, they never sought $8 billion and that the $27 million recovery was an undeniable success. Defendants' argument implicates the eighth Barber factor: the amount in controversy and the results obtained.

The Fourth Circuit has recognized that "the most critical factor" when analyzing an appropriate fee award is "the degree of success obtained." Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998). "When a 'plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" Id. at 196-97 (quoting Hensley, 461 U.S. at 436. On the

18

other hand, it is inappropriate "to simply compare the 'total number of issues in the case with those actually prevailed upon.'" Jones v. Soulhpeak Interactive Corp. of Del., 777 F.3d 658, 676 (4th Cir. 2015) (quoting Hensley, 461 U.S. at 435 n. 11)). While courts should "compare the damages award to the amount sought, a court should not reduce a fee award simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.

The Court disagrees with Defendants that because the $27 million recovery is less than 1% of the alleged scheme, that Relators success was "minimal." The Amended Complaint does not request a specific amount of damages, other than "an amount equal to three times the damages suffered by the United States" and civil penalties for each violation. The Court also agrees with Relators that their recovery was significant, especially considering that Relators were awarded a 28.5% share of the $27 million recovery, nearly the maximum share allowed under the False Claims Act.

Having determined that the proposed rates are reasonable and having addressed each of Defendants' objections, the Court will now analyze the balance of the Barber factors: (2) the novelty and difficulty of the questions raised; (4) the attorney's opportunity costs in pressing the instant litigation; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (10) the undesirability of the case within the legal community in which the

suit arose; and (11) the nature and length of the professional relationship between attorney and client.

Relators' evidence establishes that this case dealt with relatively complex factual and legal questions, and the Court is mindful that cases brought under the False Claims Act involve procedural nuances. The Court therefore finds that its analysis of the second Barber factor – the novelty and difficulty of the questions raised – does not merit any reduction. Similarly, the Court finds that its analysis of the fourth Barber factor, the "opportunity costs" in pressing the litigation, does not produce any meaningful reason to adjust the proposed award. A case of this magnitude invariably involves a large amount of work, likely precluding counsels' ability to work on other matters.

The Court's analysis of Barber factors six and seven – the expectations at the outset of litigation and the time limitations imposed by the client or circumstances – does not require any reduction. The Court is mindful that the progress of this case was, to some degree, dictated by the Government's own initial investigation and the Court's imposition of the stay periods, but neither of these limitations warrant a reduction.

The Court also finds that its analysis of Barber factors ten and eleven does not merit any adjustment of the proposed award. Defendants argue that these types of cases, which Relators' counsel took on a contingency basis after January 2017, are more difficult

to pursue for False Claims Act practitioners, particularly where the Government does not intervene. There is also some evidence that Robert Begleiter was retained because of his relationship to one of the Relators. Accordingly, the Court finds no basis to reduce the proposed award based on factors ten and eleven: the undesirability of the case within the legal community in which the suit arose and the nature and length of the professional relationship between attorney and client.

Defendants' final argument is that Relators should not recover their $117,192.45 in costs because they failed to produce receipts supporting their reasonableness. The Court agrees with Relators, however, that Robert Begleiter's declaration and Relators' Exhibit N sufficiently details the expenses incurred. Relators have provided sufficient evidence to allow the Court to review the reasonableness of the charges, and finding no other basis for a reduction, the Court finds that Relators are entitled to recover their costs.

Relators also seek leave to file a "fees on fees" petition to include all fees incurred in connection with filing this motion. "It is settled law in this circuit that a party can recover expenses incurred in preparing a motion for attorneys' fees." Saman v. LBDP, Inc., No. DKC 12-1083, 2013 U.S. Dist. LEXIS 172461, *23 (D. Md. Dec. 6, 2013) (citing Ganey v. Garrison, 813 F.2d 650, 652 (4th Cir. 1987)). But it is Relators' burden to establish that

they are entitled to the award at the outset, and having submitted no documentation supporting the amount of fees expended in connection with preparing and filing this motion, the Court finds no reason to permit leave to file a second fee petition and initiate yet another round of briefing on the same issue. Put another way, "[a] request for attorneys' fees should not result in a second major litigation." Rum Creek Coal Sales, 31 F.3d at 181 (citing Hensley, 461 U.S. at 437 n. 12). For similar reasons, the Court will also deny Defendants' Motion for Leave to File a Sur-Reply. Defendants argue that Relators' Reply Memorandum raised new factual and legal issues that would "unfairly prejudice" Defendants if left unaddressed, but Defendants' proposed sur-reply repeats the same arguments made in their brief in opposition to Relators' motion. Defendants have been afforded the opportunity to fully brief and argue the issues before the Court, and their Motion for Leave to File a Sur-Reply should be denied.

For the foregoing reasons, the Court finds that Relators entitled to an award of $3,959,968.44 in attorneys' fees and $117,192.45 in costs. An appropriate order shall issue.

_Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
~~July ___, 2020~~
Aug. 3, 2020

22